

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

August 27, 1992

Mr. Robert H. Norris
Executive Director
Texas Board of Architectural Examiners
8213 Shoal Creek Blvd., Suite 107
Austin, Texas 78758-7589

Opinion No. DM-161

Re: Construction of section 16 of article 249a, V.T.C.S., the act regulating the practice of architecture (RQ-186)

Dear Mr. Norris:

You ask whether section 16 of article 249a, V.T.C.S., which regulates the practice of architecture, prohibits an individual, other than one licensed as an architect, from preparing the plans and specifications for the public buildings described by that section. Section 16 was adopted in 1989 and amended in 1991. *See* Acts 1989, 71st Leg., ch. 858, § 8, at 3836; Acts 1991, 72d Leg., ch. 579, § 2. When first adopted, section 16 read as follows:

> To protect the public health, safety, and welfare of the citizens of the State of Texas, an architect registered in accordance with this Act must prepare the architectural plans and specifications for a new building intended for education, assembly, or office occupancy whose construction costs exceed One Hundred Thousand Dollars ($100,000.00) which is to be constructed by a State agency, a political subdivision of this State, or any other public entity in this State.

In 1991 the Texas Board of Architectural Examiners (the "board") was reestablished after going through sunset review.[1] *See generally* Acts 1991, 72d Leg., ch. 579. Section 16 was revised to provide as follows:

> (a) To protect the public health, safety, and welfare of the citizens of the State of Texas, an architect registered in

_____

[1]The Sunset Advisory Committee, established by chapter 325 of the Government Code, reviews the state agencies scheduled for abolition in each legislative session and makes recommendations on the abolition or continuation of the agency. Gov't Code § 325.012.

accordance with this Act must prepare the architectural plans and specifications for:

(1) a new building that is to be constructed and owned by a State agency, a political subdivision of this State, or any other public entity in this State if the building will be used for education, assembly, or office occupancy and the construction costs exceed $100,000; or

(2) any alteration or addition to an existing building that is owned by a State agency, a political subdivision of this State, or any other public entity in this State if the building is used or will be used for education, assembly, or office occupancy, the construction costs of the alteration or addition exceed $50,000, and the alteration or addition requires the removal, relocation, or addition of any walls or partitions or the alteration or addition of an exit.

(b) This section does not prohibit an owner of a building from choosing a registered architect or a registered professional engineer as the prime design professional for a building construction, alteration, or addition project.

(c) This section does not prevent, limit, or restrict a registered professional engineer from performing any act, performance, or work that is the practice of engineering as defined by The Texas Engineering Practice Act (Article 3271a, Vernon's Texas Civil Statutes).

V.T.C.S. art. 249a, § 16.[2]

Article 249a, V.T.C.S., defines the "practice of architecture" as follows:

"Practice of Architecture" shall mean any service or creative work, either public or private, applying the art and science of developing design concepts, planning for functional relationships and intended uses, and establishing the form, appearance,

---

[2]We address both the 1989 and 1991 versions of article 249a, V.T.C.S., because the legislative history of the 1989 amendment is relevant to your question. Citations in the text to article 249a, V.T.C.S., will refer to the 1991 version of this statute unless otherwise specified.

> aesthetics, and construction details, for any building or buildings, or environs, to be constructed ... the proper application of which requires architectural education, training and experience.

V.T.C.S. art. 249a, § 10(a).

Briefs submitted in connection with this request argue that professional engineers registered pursuant to the Texas Engineering Practice Act, V.T.C.S. art. 3271a, are authorized to design buildings under their licensing statute and need not be licensed as architects to do so. Cases from other states have determined that the professions of architect and engineer overlap in the area of designing buildings, so that some building designs may be prepared by a person with either license. *See Smith v. American Packing & Provision Co.*, 130 P.2d 951 (Utah 1942); *see also* Annot., 82 A.L.R.2d 1013, 1026 (1962) (architectural and engineering services within license requirements). Section 10(b) of article 249a, V.T.C.S., suggests that the professions of architect and engineer overlap in Texas as well. This provision states in part:

> [I]t is the intent of this Act to acknowledge the necessity of professional inter-relations and cooperation between the professions for the benefit of the public and to achieve the highest standards in design, planning, and building. Therefore, nothing in this Act ... shall ... prevent, limit or restrict any professional engineer licensed under the laws of this State from performing any act, service or work within the definition of the practice of professional engineering as defined by the Texas Engineering Practice Act.

V.T.C.S. art. 249a, § 10(b) (footnote deleted).

An examination of the Texas Engineering Practice Act shows that the practice of engineering includes building design. The State Board of Registration for Professional Engineers licenses persons to engage in the practice of engineering, defined as follows:

> "Practice of engineering," or "practice of professional engineering" shall mean any service or creative work, either public or private, the performance of which requires engineering education, training and experience in the application of special

> knowledge of the mathematical, physical, or engineering sciences to such services or creative work.

V.C.T.S. art. 3271a, § 2(4). A rule promulgated by the Board of Registration for Professional Engineers (BRPE) defines professional engineering as follows:

> Professional engineering-Professional service which may include ... *planning, designing, or direct supervision of construction, in connection with any public or private utilities, structures, buildings,* ... when such professional service requires the application of engineering principles and the interpretation of engineering data.

22 T.A.C. § 131.18 (emphasis added). When the Texas Engineering Practice Act was first adopted in 1937, it defined the practice of professional engineering as "any professional service, such as consultation, investigation, evaluation, planning, *designing,* or responsible supervision of construction in connection with any public or private utilities, structures, *buildings,* ... when such professional service requires the application of engineering principles and interpretation of engineering data." Acts 1937, 44th Leg, ch. 404, § 2 (emphases added). Like the BRPE's rule quoted above, the definition expressly included building design. In 1965 the definition of the "practice of professional engineering" was amended to read as it does today. Acts 1965, 59th Leg., ch. 85, at 209. The amending legislation was adopted to prevent unqualified persons from practicing engineering. *Id.* § 10 (emergency clause). The definition of the "practice of professional engineering" was amended to broaden the coverage of the Engineering Practice Act, and not to omit engineering services already covered by the act.

Section 19(a) of article 3271a, V.T.C.S., makes it unlawful for the state or any of its political subdivisions to engage in the construction of certain public works "unless the engineering plans and specifications and estimates have been prepared by ... a registered professional engineer." Section 20 exempts certain persons from the registration provisions of the statute, provided that they are not represented as being legally qualified to engage in the practice of engineering. Among other persons, section 20 exempts the following:

> A person, firm, partnership, joint stock association or private corporation ... *drawing plans and specifications for:* (1) any private dwelling, or apartments not exceeding eight units per building for one story buildings, or apartments not exceeding

four units per building and having a maximum height of two stories, or garages or other structures pertinent to such buildings; or (2) private buildings which are to be used exclusively for farm, ranch or agricultural purposes... or (3) other buildings, except public buildings included under Section 19 of this Act, having no more than one story... [further describing building]; provided that no representation is made or implied that engineering services have been or will be offered to the public.

V.T.C.S. art. 3271a, § 20(f) (emphasis added); *see also* V.T.C.S. art. 249a, § 14 (similar exemption for licensing requirement for architects).

Thus, there is an exemption for persons who draw plans and specifications for the described buildings. Since these persons would be engaging in the practice of engineering if they did not have the benefit of this exception, the legislature understood that the drawing of plans and specifications for buildings ordinarily constituted the practice of engineering. The practice of engineering includes preparing building plans and designs when that service requires the application of engineering principles and the interpretation of engineering data.

A report prepared to assist the sunset review process reviewed the authority of the Board of Architectural Examiners, and in doing so, recognized that licensed engineers were authorized to prepare building designs under the engineer's licensing statute. TEXAS SUNSET ADVISORY COMMISSION, TEXAS BOARD OF ARCHITECTURAL EXAMINERS, STAFF REPORT TO SUNSET ADVISORY COMMISSION (1991). Until article 249a, V.T.C.S., was amended in 1989, the Board of Architectural Examiners enforced a "title act," which restricted the use of the title of architect and the ability to offer services entitled architectural services to individuals who had been registered by the board.[3] *Id.* at 1; *see also* House Comm. on Bus. and

_____

[3]A "title act" requires individuals who use an occupational or professional title to register with the appropriate licensing agency and become subject to its regulation. It does not authorize the agency to regulate persons who do the work of the occupation or profession without using the title. For example, when article 249a, V.T.C.S., was adopted in 1937, it exempted persons and firms that prepared plans and specifications for a building, as long as they did not represent themselves to be architects. Acts 1937, 45th Leg., ch. 478, § 16(3), at 1279.

A "practice statute," in contrast, authorizes a state agency to regulate the practice of a profession or occupation, and prohibits individuals who are not licensed by the agency from providing

Com., Bill Analysis, S.B. 743, 71st Leg. (1989). Thus, the board could not restrict an individual from providing building design services as long as he used a title other than architect, such as building designer. TEXAS SUNSET ADVISORY COMMISSION, *supra*, at 1. The 1989 amendments authorized the board to regulate the practice of architecture and prohibited individuals who were not registered architects from providing architectural services for certain types of buildings. *Id.*

In discussing the exemptions from the registration requirements of article 249a, V.T.C.S., as amended in 1989, the report indicates that the engineer's license still allowed the licensee to design buildings, despite the adoption of section 16:

> The statute [V.T.C.S. art. 249a] contains two different kinds of exemptions from the registration requirements for architects. One set of exemptions concerns activities that are exempt because they are not considered architectural practices. For example, *engineers or interior designers may perform building design services as part of their work, but may not hold themselves out as architects.*

TEXAS SUNSET ADVISORY COMMISSION, *supra*, at 7 (emphasis added).

The second set of exemptions covers architectural activities that are exempt from the practice provisions of the act. *Id.* at 8. These include an exemption for persons who prepare architectural plans and specifications for a privately owned building used as a single-family or two-family home. *See* V.T.C.S. art. 249a, § 14. In addition, the report states the architects' law "also exempts persons who perform design work for new public buildings that cost less that $100,000." TEXAS SUNSET ADVISORY COMMISSION, *supra*, at 8. This reference to section 16 of article 249a, V.T.C.S., informs us that section 16 concerns building design work. An engineer's license confers authority to perform building design services requiring the application of engineering principles and the interpretation of engineering data for public buildings described by section 16.

---

(footnote continued)

the kind of professional services it regulates. TEXAS SUNSET ADVISORY COMMISSION, TEXAS BOARD OF ARCHITECTURAL EXAMINERS, STAFF REPORT TO SUNSET ADVISORY COMMISSION (1991), at 1; House Comm. on Gov't Org., Bill Analysis, S.B. 429, 72d Leg. (1991).

The licensed engineer's authority to prepare building plans for public buildings described in section 16 of article 249a, V.T.C.S., has been made even more clear by the 1991 addition of subsections 16(b) and (c) to that section. House Comm. on Gov't Org., Bill Analysis, S.B. 429, 72d Leg. (1991). Section 16(a) provides that a registered architect must prepare the architectural plans for new buildings of a certain description.[4] Subsection 16(b) qualifies subsection (a) by authorizing the owner of a building to choose "a registered professional engineer as the prime design professional for a building construction, alteration, or addition project." V.T.C.S. art. 249a, § 16(b). Section 16(c) preserves the authority of registered engineers to design buildings pursuant to the Texas Engineering Practice Act. Subsection 10(j), also enacted in 1991, provides that a registered professional engineer who has an architectural engineering degree is not prohibited from using the title "architectural engineer."

The 1991 amendments to section 16 of article 249a, V.T.C.S., as well as subsection 10(j) of that statute, recognize the overlap between the work of an architect and an engineer in the area of building design. Section 16 does not bar a registered professional engineer from preparing plans and specifications. Such preparation requires the application of engineering principles and the interpretation of engineering data for "a new building that is to be constructed and owned by a State agency, a political subdivision of this State, or any other public entity in this State if the building will be used for education, assembly, or office occupancy and the construction costs exceed $100,000." *Id.* § 16(a)(1). Licensed engineers continue to have the authority to prepare building designs and specifications that they had prior to the adoption of section 16 in 1989.

## SUMMARY

Section 16 of article 249a, V.T.C.S., the statute regulating the practice of architecture, does not bar a professional engineer licensed under article 3271a, V.T.C.S., from preparing plans and specifications, the preparation of which requires the application of engineering principles and the interpretation of engineering data, for "a new building that is to be constructed and owned by

---

[4]The preparation of "architectural plans" presumably would require the application of "architectural education, training, and experience." V.T.C.S. art. 249a, § 10(a).

a State agency, a political subdivision of this State, or any other public entity in this State if the building will be used for education, assembly, or office occupancy and the construction costs exceed $100,000."

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Susan L. Garrison
Assistant Attorney General